Our final case today is PAMEGA GROUP v. LIFE TECHNOLOGY PAMEGA GROUP v. LIFE TECHNOLOGY Jim Troopis I'm Jim Troopis, and I represent PAMEGA Corporation along with my co-counsel, Susan Podolsky. I want to address three things. We have time this morning. First of all, I want to address some of the essential facts here. Second, I want to address the form over substance issue and how it plays in those facts. And finally, if time allows, I'll address two of the equity issues for unjust enrichment and labor. You've got an arbitration clause here which covers this dispute. Why is that the end of the matter? Because, in fact, the first question that every court must ask is whether or not there was an agreement between these two parties to arbitrate. The best evidence of the agreement is the language of the arbitration clause. The language of the arbitration clause covers this dispute, does it not? The language of the arbitration clause does not apply because the original agreement is with Research Genetics and PAMEGA. It was subsequently assigned to Invitrogen and IP Holdings. Was there anywhere in the contract where it said arbitration rights are not transferable? Yes. There's a specific clause that does that. Where is the anti-assignment clause? The anti-assignment provision of the agreement itself. In fact, that's the essential question before this court. There's a provision in the agreement that says it cannot be assigned absolute permission from PAMEGA permission to assign to IP Holdings. IP Holdings is no longer the party holding the agreement. The agreement was transferred to Life Technologies. In fact, there's an immense amount of evidence that could have solved this all if you'd had some clause that said arbitration rights are not transferable, period, exclamation point. It didn't say that in the agreement. Where does it say that? The anti-assignment. The anti-assignment provision of the agreement itself. What's that? The anti-assignment provision of the agreement itself. Well, the assignment provision, we just went through that. It was assigned. No, it was not. It was assigned to IP Holdings. It was never assigned to Life Technologies. It was assigned to IP Holdings. That is correct. It was assigned to IP Holdings. And then, but you can't, once you've assigned, then it can be, then if you had said arbitration rights are not transferable, you'd be fine. But they are transferable. They can be transferred when an assignment is approved. But the party is to be approved. The assignment to IP Holdings is approved, wasn't it? Yes, but IP Holdings is not the claimant here. The claimant is Life Technologies. That's what the arbitration was ordered to take place, between IP Holdings and a demand for arbitration. They did not make the demand for arbitration. The first one they didn't make. The second one they did. That is correct. They made a demand, secondly, when they no longer had the agreement. The agreement had previously been assigned. The record here is immense in that respect. In September of 2009. The agreement had been assigned to Life Technologies when you wouldn't consent. Your client wouldn't consent to it. Because, but now, Your Honor, because in substance, it had that under the Cook case, and the Seventh Circuit law is controlling you. Under the Cook case, almost precisely on point, involving a patent license agreement, in which the party, in order to get around an anti-assignment clause, comes up with a method by which it sells and resells a product, in this case, a product to another company. So it avoids the assignment provision. Here, the anti-assignment clause was precisely intended to avoid this consequence, where a major competitor, in an area in which we have spent decades developing products, now comes in and demands recompense under this agreement. It was precisely that reason that we had an anti-assignment clause in the first instance. So for them to get a ruse around this and act as if they had the agreement, they can't. They assigned it. It is as if we can simply transfer it out by whatever means we want, and it won't matter. Well, how, help me out here. Even if I agree with you, they're past the assignment point. It was assigned to IP Holdings. Now, IP Holdings gets bought and merged with Appalachia. Okay. What, how can I get around the fact that something that was assigned and is now lawfully in the IP Holdings portfolio, and that portfolio has now been acquired by someone, but now that there are lots of possibilities and ways in which it might have occurred, that is not the way it did occur. The way it did occur is in September of 2009, they transferred it to Life Technologies. And then in October, Life Technologies made its first notice to us, indicating it didn't work. So Life Technologies, subject to the approval, was acquired. Right. But now, Your Honor, in digging into a document underneath it, and forgetting, I think, the principle of the Cook case, form cannot trump substance. Well, I like that general idea that form doesn't trump substance, but IP Holdings, the living corporation, the record shows that, and they sent the arbitration notice the second time. But those are, again, those are form, they're not the substance. But, Your Honor, if in a situation where someone has an anti-assignment clause, and a party can, as happened here, we believe, simply treat everything as assigned, but not come and seek permission or otherwise take action. Treating it as assigned. They're treating it as not assigned. You objected, it's not assigned to Life Technologies. IP Holdings did acquire it with your consent, and they're the ones who are asking for the arbitration. What's going on? With all deference, Your Honor, we objected. We did not consent. And there is a very large difference. They're trying to hide, in this case, behind the principle that they can act however they want. They can treat it as fully assigned. If you resolve this, once again, with a clause, arbitration rights are not transferable at any point. That's another alternative. But if you also have the anti-assignment clause, as they had here, just as they had in the Cook case. Well, but isn't this a weakness of the anti-assignment clause? The corporation that holds the proper assignment can be acquired by someone, and then they can change their point of view as to how they're going to exercise that clause. Isn't that a risky thing? There are always risks that one takes, but here that wasn't a risk that I took, because here that is not what occurred. In September of 2009, according to the facts in this record, they said it had been assigned and had been transferred. What is an assignment if it's not transferred with every right related to the contract? That's what they did in September. They repeated it in October, and then sent a notice at that time. I'd like to agree with you if you wanted to say that it had been assigned to Life Technologies, that if you want to treat it as assigned to Life Technologies, then Life Technologies could ask for the arbitration. They rejected that. They said it can't be transferred to Life Technologies because we didn't consent. They said, okay, then the proper party is IT Holdings, which still has the right to demand arbitration. You've got a problem. You want to have it both ways. No, Your Honor, I don't think we're asking to have it both ways. The economic premise of this clause, the underlying intent of the parties from the day this was entered into, to have any arbitration at all, was that they were non-competitors in these markets. I thought that was the arbitration clause. No, we didn't. We used an anti-assignment clause for it, and that's how we intended to achieve it. And we did achieve it. We twice before said that. In fact, even Judge Crabb acknowledges there is no circumstance under which we would have allowed an assignment of disagreement to Life Technologies. We have had a long and contentious history with these parties, and we never would have agreed to that. And so now we have them treating it as assigned in every respect. Every attribute of an assignment has occurred here. And they are now saying, never mind. They can't do that. You can't use the power of attorney, or you can't use this other method. Let me take the flaw. What has gone wrong here? Give me something that I can say is an error that has to be corrected. The judge has to hold an evidentiary hearing on the question of who is the holder of this contract. If the contract... I can hold it. They found that. She can't find that because she did not hold a trial on that matter. And there are repeated cases, numerous cases that we cite in the brief, that require to determine who the parties are to an arbitration agreement is a matter that must have an evidentiary hearing or trial. That is one principle, even as we broaden arbitration. Is that the position that you want us to resolve by figuring out the intent as to that transfer? I thought that everybody had agreed that Arthur Holdings had no authority to transfer the agreement and the arbitration obligation to Mass Technologies, and that all sides agreed, and that the question was what they called an oversight, an administrative oversight, and whether, in fact, the court should say, we're going to correct the mistake and prove it to society. But what's your position is that there has to be an evidentiary hearing as to intent? That seems to me much more difficult. Your Honor, the alternatives here are either that the facts are unequivocal that they did, in fact, transfer all the rights, as Your Honor has just stated, whether that was their intent. Let's look at the two facts that you're using. I'm saying not as a matter of intent. The letter of the agreement, and Dash Holdings, I think, said we made a mistake. It was an oversight. And we're saying they didn't make a mistake. They, in fact, knew precisely what they were doing, and they took advantage of that, intrusively and otherwise, in every action. They needed to do this. They needed to transfer this in September, November, October, May, and all the months in which there's now facts to do that. This was no oversight on their part. They, in fact, transferred all the rights in September 2009 and operated thereafter as if it was fully transferred. By the way, did you ask for an evidentiary hearing? Yes, we did. Down below? Yes, we did. When you come back up, will you show us that in the record? Yes. We're in your rebuttal time now. Oh, I apologize. That's fine. I should look more carefully. I apologize. When you come back up, will you show us in the record what you asked for your evidentiary hearing? We will do that. Thank you. Ms. Johnson? May it please the Court, Christine Johnson for the appellee. With me is co-counsel Amy Sutton. There's three points I'd like to make, if I may, here today. First, the threshold question for any court in resolving the application of an arbitrability clause is whether the scope of the clause covers the dispute in question. Here we have two broad arbitration clauses, one in Section 22.1 of the agreement and one in Appendix E to the agreement, which state that all controversies or disputes arising out of or relating to the agreement are covered. No dispute here. This controversy relates to Section 9.4 of the agreement regarding payment of sub-licensee royalties. One of the arguments that they raise is that if, in fact, they go to arbitration, they would be prejudiced because of the difficulties of discovery and the record and the facts and so on. Is this something, is this an issue that was actually joined in the district court? Have you stated that discovery would be refused and evidence is not available and because of the changes in corporate structure, documents are not to be produced? And the other concerns that they may raise where they say with the judicial structure, they would have an opportunity for a more open and fair acquisition of the issues. Your Honor, it's certainly correct that Promega has stated that the nature of the arbitration clause and the arbitration process does not allow for as broad a discovery. It depends. I think that certainly one can say, never mind, we will produce everything. We won't be prejudiced by this being an arbitration. I don't see anywhere that that, I'll call it a concession, accommodation was offered. I see, Your Honor. The arbitration clause itself, I think our position below is that the clause itself resolved that issue. The clause allows for discovery. It allows for document requests. It allows for interrogatories. It allows for five depositions per side. Now, was there a concession below that I.P. Holdings would comply with that clause? I can't say there's an outright concession in the record, but certainly I.P. Holdings has taken the position that the full extent of appendix B, which sets forth the discovery procedure, should be followed and would be followed. So with respect to documents, I think the court was interested in that. The position of I.P. Holdings is certainly they would produce documents pursuant to that appendix. So this is another culprit trail which would require tracing if that's true. It might very well require more probing than one might ordinarily obtain through arbitration. And again, they point out as to why one would object to arbitration in this case. Here, these are adversaries. They've been on contention for years. And all of a sudden, now I.R. is posting the arbitration statement. They've broken the rules. I think there's two points there that the court raised. The first, with respect to the elaborate corporate trail, it's certainly correct that there have been assignments to the agreement, acquisitions, mergers, things of that nature. That certainly could mean, as a practical matter, that it could be difficult to obtain documents. I don't think that it would be any different in the arbitration process, however, to do that. Can they get discovery from RGI and Life Technologies, not just I.P. Holdings? I.P. Holdings is a party to the agreement. Yeah, that's right. So they're not parties. So the controlling party here is not going to be subject to discovery, right? Technically, I think that that would be correct as a practical matter. This was actually not in the brief before the court, however, but it took place later. As a practical matter, discovery was served on the other party. So it's true. It wouldn't say anything? It was, Your Honor. It was. So Life Technologies is consented to depositions, whatever else? Yes, and the reason for that, frankly, is that I.P. Holdings, as the court is aware, is a wholly owned subsidiary of Life Technologies. It does not maintain its documents separately. You are relying on the difference in corporate form to resist discovery about the life engine. That's correct, Your Honor. That's correct. I believe that there were some objections made to the first round of discovery that were somewhat unclear that were then resolved. But I didn't see any representation that there would be no difference in the opportunity for investigation of the issue. I don't think that there is a representation in the record that there would be no difference. I think that... Then why aren't they entitled to complain? They may very well be prejudiced. Because they agreed to an arbitration provision. They undisputedly agreed to an arbitration provision that allowed for discovery. And I would point out that it actually allows for greater discovery than is often provided for an arbitration. Your interpretation here today is that Life Technologies will produce the necessary documents that are relevant, right? To the extent that it has them in its possession, yes. The court pointed out a practical difficulty, which is that the agreement was executed in 1996 by a predecessor company that is no longer in existence. I certainly cannot state that all of the documents exist. But to the extent they exist, they either have been or will be produced. And you did agree that it was an oversight, a mistake, not to transfer, not to request permission to make this transfer. Is this something that you expect the court to correct? Is it a mistake? A mistake of law, of practice, or of... On its face, it's not proper to use force, but it has to be transferred without permission. Absolutely not. We absolutely do not expect the court to correct that. What has happened is Promega made the argument that the agreement was in fact assigned to Life Technologies, and that that assignment was improper because Promega didn't consent. They're right. They didn't consent. They were not asked to consent. Counsel, I think, stated that they objected or refused consent, but that's not correct. They were never asked for consent because of an oversight. They didn't consent. It's quite explicit. Can I be transferred without consent? That's correct. It's quite explicit. It's not. Maybe it wasn't transferred. We absolutely agree that it was not transferred. It rests with and is owned by and is enforceable by IP Holdings. But then how come it insists on arbitration? IP Holdings is insisting on arbitration, not Life Technologies. It is only IP Holdings that could enforce the clause and that could insist on arbitration. Was it a binding on Life Technologies? Well, the claim in the arbitration, the only claim presently at issue in the arbitration, is whether Promega properly calculated sub-license royalties under Section 9.4. So, at this point, there is not any claim against Life Technologies or IP Holdings. What are you doing here? The judge ordered arbitration. The appellant has appealed for that order. And you're standing here and saying that you don't object to their position because you're not the party? Now, IP Holdings, to clarify in case there's any confusion, the judge ordered arbitration between Promega Corporation and IP Holdings. IP Holdings is fully in agreement with that order. Promega has objected because the basis of Promega's objection is that the judge acted improperly in ordering. You say that never mind, that's not us, so we don't object, we're not going to defend against that appeal? IP Holdings is defending against the appeal, certainly. It's IP Holdings' position of what the district court judge did. You're not representing IP Holdings? I'm representing IP Holdings, yes, the appellee, IP Holdings. Then you are objecting. Did I mishear? Did you want to speak when you said that you're not involved? Life Technologies Corporation is not involved. I think that may have been... And who do you represent? I represent, actually, all of the parties, but for purposes of the appeal, it's IP Holdings. Do you represent RGI, too? RGI is no longer an existing entity. It was acquired by Invitrogen Corporation in 2000. Invitrogen Corporation is now known as Life Technologies. There are three entities that issue before the district court. Life Technologies Corporation, which is a Delaware corporation. It has two wholly owned subsidiaries, Applied Biosystems LLC and Invitrogen IP Holdings. It is only IP Holdings that has standing to enforce the arbitration agreement. It is only IP Holdings that the district court judge's order pertains to, and it is only IP Holdings that is here before the court today defending the appeal. So now, if their dispute extends to the entire family of companies, not just IP Holdings, they do have a problem, don't they? You're telling us you're only really representing half of what contends as the problem. There's two disputes at issue, Your Honor. There's the arbitrable dispute, which is limited solely to whether or not Promega properly paid sublicensed royalties under Section 9.4 of that 96 agreement. Promega currently owns that agreement on the one side. IP Holdings, by assignment in 2004, owns it on the other side. Those are the only two parties involved in that dispute. There is, of course, another dispute pending before the district court. Now, that involves allegations of patent infringement, an entirely separate license agreement, some other claims that are stated against Life Technologies and Applied Biosystems LLC. Those are not at issue before this court. They're not part of the 96 license agreement that contains the arbitration provision. So you're saying that if they have a piecemeal arbitration, a direct contravention of the agreement that's being arbitrated, and it still isn't going to resolve the issues of everyone's party? Your Honor, it would not be a piecemeal arbitration because there's only two parties that are subject to the 96 agreement. The right to arbitrate is found only in that 1996 license agreement. Promega is a party to that agreement. Well, I did say it's not a piecemeal arbitration, an arbitration of a piece of the dispute. It's an arbitration of one dispute, the dispute regarding payment of sublicense royalties. Yes, of a piece of the dispute involving each party. And what about the great philosophical point of you coming to court, you raise all of the issues arising out of these facts, and you get a decision and you go on to the next case? Your Honor, the difficulty here is that there are two agreements at issue. The 96 agreement, which is arbitrable only between the two parties before the court today, Promega and I.C. Holdings, and a subsequent 2006 license agreement. It's not arbitrable because it wasn't transferred. So that's true that it's not arbitrable. It was to correct what you call an administrative oversight. Well, the 96 agreement is arbitrable. The administrative oversight issue is whether it was ever assigned to life technologies, which certainly it was not. And yes, that was due to an administrative oversight. There has been an intent to apply that. Excuse me? Okay. So with the two license agreements, it can get a bit complicated. The issue pending before the district court that is going forward and is scheduled for trial in February of this coming year is related to the 2006 license agreement, also involving Promega, not involving I.C. Holdings. I.C. Holdings has never had any sort of an interest under that license agreement. That involves Applied Biosystems, LLC, which is a different wholly owned subsidiary of Life Technologies Corporation. There are different patents that issue in that process. It's a very, very limited arbitration provision in that agreement, and no one's ever taken the position that the dispute related to that agreement executed 10 years later is arbitrable. It is not. There are allegations of patent infringement arising out of that agreement that the district court will address in due course. So if this goes to arbitration, and the issue that, and so one of the things, well, I guess the issue is decided one way or another. Whichever way it goes, is that going to end the controversy involving these parties? Absolutely not. It will not because... It's not ending disputes between Promega and I.C. Holdings, right? That's correct. That's correct, Your Honor. It will, yes, it will decisively end the dispute between Promega and I.C. Holdings regarding sublicense royalty payments. It will not involve the dispute pending before the district court between Promega, Applied Biosystems, and Life Technologies involving infringement of patents under a separate agreement. The dispute regarding sublicense royalties will be affirmatively addressed if it's to go to arbitration. You have no interest in putting all this together and deciding it at one time, right? I think you've got a little bit of a leg up if you can separate them, right? Your Honor, I can see from a practical standpoint why that would be a question of... Why that question would be of interest. And I.C. Holdings' position is that the arbitration was initiated first, by the way. It was initiated in May of 2010. But it's really quite a narrow dispute. Did you properly account for royalties or did you not? Should they be 8% or should they be some lesser figure? Let's look at Section 9.4 and decide. The other claims pending before the district court were raised by Promega later on that month, at the end of May. I.C. Holdings' position is they bargained for the arbitration clause in the 96th Agreement. They sought arbitration under that clause. You're speaking a lot of words, but you're not telling me why don't we just do this all at one time? Because we bargained for the arbitration provision and we want an arbitrator to decide the underpayment issue rather than a jury. This is a separate dispute. It is indeed a separate dispute from the one that's pending before the district court. That's correct, Your Honor. Thank you, Mrs. Thompson. Thank you. Could this dispute have three and a half minutes? You requested that in an interior hearing, right? Yes, if I may quote that A1674 of the appendix, which is our memorandum in support of our renewed motion, that A1674, paragraph B, if the court believes substantive facts remain in dispute, the court should proceed to an evidentiary hearing or trial to resolve the disputed facts. Disputed facts, as we talked about earlier, is it a mistake? Is it not a mistake? Wait a minute. That's not a request. That's not something you ask to have an evidentiary hearing. That's saying the court comes to the fact that it should have a hearing. Well, it's the way we normally write a request. In the brief itself, it cites many cases, many of which we cite here as well, for the proposition that an evidentiary hearing is required. Where do you say in the fact dispute requires an evidentiary hearing? We said it in the brief itself. I mean, we talked about the very things we're talking about here. Where do you say in the brief that there's a fact dispute that requires an evidentiary hearing? We believe, let me begin by saying we believe there was not a fact dispute, that in fact the matter had been completely assigned, and that in fact it had already left. They argued that was not true. We suggested that if those two propositions were equally before the court, it was not in the court's jurisdiction to then ignore the fact that there was a fact dispute. But in a trial court, our proposition was, A, there is a fact dispute. B, if you believe the other side, the best you have is a fact dispute. And let me illustrate here. There are three possible propositions. One, they are a successor. By letter, by the notice, by every action they have that they're a successor. Well, in that case, we just win because in fact they've taken on board. Is there a fact dispute as to why this contract was assigned to IP Holdings? Well, or you could take their position that somehow they had a right to do these various things under some type of a power of attorney and that there were oversights or mistakes. Well, but that contradicted by the record. That contradicted by every fact in the record. Only after this litigation begins, only after they've made the demand as the party in interest, did that come forward. So if there's a power of attorney or a successor, if that question left or if there's some righted question, then we have a fact dispute. Why don't you just want to deal with this separate issue separately? Let's cut to the chase. Last week, the court in the district court found that life technologies had infringed the patents in a summer judgment rule. It set for trial in February, likely trial on damages and its remaining issues. In the meantime, we've had to wait because the other issues involved the same patents. The patents involved here under the 2006 agreement and the 1996 agreement are the same. The rights we assert in the district court for those patents is based on the 96 agreement. It is absolutely incorrect what was said here when it was said that they do not have that agreement, that issue in the arbitration. The arbitration is premised on the payments made on the 2006 agreement. That's the premise of their claim. Those claims were made by a third party, Applied Biosystems. Applied Biosystems eventually morphed into this life technology. So you think they want a second bite at the same amount? Absolutely. That's exactly what's going on here. Now, one other quick question. Did you get discovery from life technologies and ABI and everybody else you wanted? We are in the process of finding out whether we're going to. There is no third party discovery allowed in the other proceedings. There have been voluntary meetings going on. There are other first parties, other third party licensees who do not need to cooperate. And so at this point, I don't have a clue whether we're going to get discovery or not. I do know this. The only way we would get discovery is if life technologies voluntarily gives it because they are non-party to that agreement by their statement. And, therefore, it's only by the grace of them saying we can get it. Well, I think we heard that, didn't we? I think that you now have that point. We have to amend the agreements to allow for depositions. They've not allowed any, any depositions of their people in the other proceedings. At best, what we've had are outside meetings about potential records. Here's the problem. If one looks at where we stand today, claims 19 and 20 are in the district court. They are putting unjust enrichment to life technologies arising out of the arbitration because they're one and the same. How can that be determined at this point? We haven't even gotten to the arbitration. You can't undo the arbitration clause by making unjust enrichment claim in district court. Either life technologies has the agreement, or in this case, life technologies is the complete Life Technologies and Applied Biosystems got a release, a complete release in 2006, for the tenants they needed from ADA. Now, Life Technologies through IPH, its other subsidiary, is asserting that they are entitled to get all that money back, that the release doesn't apply to them. We need to bring this to a close. Do you have a final thought here? Your Honor, we simply request that some element of reality here. But you cannot ignore that, substantively, this transfers. We never would have agreed to an arbitration. We have all the parade of horribles that comes from that. We did not agree to this party, who is now doing the arbitration, to be entitled to a hearing. Thank you. Thank you, Mr. Perkins. The court is adjourned.